You know who you look like in the back of the room? Our new chief judge. I wish. Good afternoon, your honors. I thought he was there spying on me. I was smiling, your honor. Some of that stuff was pretty funny. Good afternoon, your honors. I didn't say smiling, I said spying. I was spying, sorry. I wasn't doing that. No, I know. George Schreffer. I'm thinking that. Go ahead. Appellant Nelson. Your honor, there's over 100 pages of briefing. I thought it might be helpful if I could just break this down to a few essentials that are really important for the decision in this case. So I'm going to talk about the Crawford issue, but I'll be happy to answer questions about the cumulative error issue if you should have any. And I'd like to reserve two minutes for rebuttal. So a Crawford issue turns on two things. What is the primary purpose of the questioner in asking the questions? And what's the primary purpose of the declarant in answering the questions? And in this case, I think that there are three important facts that relate to the questioner's primary purpose and two that relate to the declarant's primary purpose, and I just wanted to focus on those if I could. For the person who asked, the question was, who shot you? It's a paramedic in an ambulance on the way to the hospital, and the question is, who shot you? Answer, John Paul, which is my client's first and middle name. That's it. That's the statement. That's the question. That's the answer. And I think that the most telling and I think determinative fact is, I mean, what we do is we ask, is this to deal with an ongoing emergency, that is somebody's been shot and there's someone running around with a gun, so we want to protect the public and the police, or is it to get information that can be used at trial? And I think it's information that can be used at trial if we look at the purpose of the questioner. And the most important way to determine what the questioner's purpose was, to see what he did with the information. Did he take the information and immediately pass it along to the police so they could go out and search for this fellow, or did he not? And the answer is, he did not. I set up a timetable on page 16 of the opening brief, which indicates that the information is not passed from the paralegal to the police for either one and a half hour or one hour and 33 minutes or two hours and three minutes. That is not consistent with dealing with an emergency. You don't call up the police and say, I have an emergency, there's somebody running around who's armed and dangerous, and they say, we're not doing anything at the moment, but our policy is to wait at least one hour and 33 minutes to two hours and three minutes before we deal with emergencies. That's our emergency dealing policy. That's just absurd. And that is the most salient piece of evidence in this case as to what his real purpose was. We also have something else that indicates what his real purpose was, and that is, he only asks that question. He does not follow it up by asking where John Paul might be. If you were really concerned, if your primary purpose was to protect the public or the police, you would ask, do you know where he lives or where he hangs out? But that question is not asked, which brings us to the third piece of important information, because it explains why he didn't ask it. He testifies. He was asked, are you concerned about the shooter? And he said, no. Well, if you were concerned about the emergency, you would be concerned about the shooter. And they asked if he, you know, is he still around. They didn't ask if he was concerned the shooter was still around. He did not say that he was. So he's not concerned about it. I mean, that's another definitive thing that goes to what his primary purpose is, which is to get this information. They were asked, why did you get this information? And he says, because I thought that this guy wouldn't make it. I needed that information. And that is a prosecution-related reason for it. We need the information because he might not be around to testify. Marquez, the declarant, might not be around. So I've got to get it now. Because if I don't get it now, nobody will ever have it, and we can't bring this guy to trial. So that is a prosecution-related, not an emergency-related purpose for asking the question. If we look at Marquez, there's two things that are significant. Now, I understand Marquez has been shot, and he is in an ambulance on the way to the hospital. And in Bryant, the Supreme Court says a lot of times it's hard to discern somebody's purpose under those circumstances. I appreciate that. But we do have some information which helps color what's going on. The first is, is it reasonable for somebody in Marquez's position to think, as he's being asked the question, that it's being asked in order to track down where John Paul Nelson is? And the answer to that is no. I mean, he's not a cop. He is not somebody whose primary purpose is to solve crime, protect the public. His primary purpose at that moment is to get medical care so he lives, which is sort of unrelated to this. And the other thing is to make sure the guy who shot him is brought to justice. I mean, that's the reasonable inferences that you can draw from his state of mind, given the objective facts of his situation. So we have the AEDPA standard that we have to apply here, right? Correct. And I have to honestly say that the analysis in the Court of Appeals decision, which comes to the contrary result in which you're arguing, is one of the most thorough analysis and discussion of Supreme Court authority that I've seen in any of these habeas cases. And so I think, I mean, I think what you need to be arguing to us is why they came to, it came to an objectively unreasonable conclusion when it found that the circumstances at the time show that it was a non-testimonial statement. May I ask, is there any, they said a lot of things. They said a lot of things. I mean, that's what I'm, I'm kind of impressed with this analysis. I don't, you know, because typically the Court of Appeals analysis is not. We fundamentally disagree on that. Okay. You might not agree with their conclusion. No, no. I disagree that the analysis is good. Let me explain why. Okay. Okay. So their analysis is that, first of all, the man is, the guy is wounded. That's correct. That is correct. He is wounded. But there's a bunch of cases which we cite in our brief which hold that that can still be testimonial. So you have to really look at the purpose of the declarant. Let me say it this way. They don't really focus on the purpose of the, of the declarant at all. So insofar as the. The purpose of the declarant or the purpose of asking the question? Well, you have to focus on both, according to Bryant. So they never get to the purpose of the declarant. Well, they say the test under Crawford is whether the primary purpose of the interrogation is to establish facts to be used against the perpetrator. Perpetrator. Yeah. And what they say is. Is that an incorrect statement? No, no, no. That's correct. What they say is it's informal. I mean, that's true. It's informal. They say that it's brief. That the, he says two things. And that immediately, or they give the impression that immediately Witt, the paramedic, passed this along. By the way, it's that last point that is really off. The suggestion that he did it immediately when he waited one and a half to two hours. That, I mean, that is the most determinative fact to me. That you're not trying to catch this guy. You know, find the person who's armed. And they make it sound as if there was some kind of like immediate response. There's not. And so the analysis may look stellar. They didn't say immediate. They said transmittal of the victim's statement to the police that same night. Yes. That same night. One and a half to two hours later that same night. It was the same night. That's correct. But when there's a one and a half to two hour gap, how can you say that you're dealing with an emergency? That's not like emergency related conduct. And the fact that it, I mean, even in Bryant they say that these are, you know, there's a whole slew of things in Bryant. They list a dozen things probably that bear on it. You know, including the stuff that the court of appeals said. But those are useful only if there's some kind of ambiguity in the police conduct. Or in the, not the police, but the interrogator's conduct. Here there's no ambiguity in his conduct. So that should be the primary, I think the determinative consideration is the fact that he didn't act to deal with an emergency. He waited. Well, you know, he has this person in his chair. He's in the ambulance. Multiple gunshot wounds. One gunshot. Bleeding. Yeah. Well, one shot. But it hit his spleen and his kidney. I don't think they're, I don't recall that they actually determined where it hit. Well, I read that somewhere here. Yeah. No, they thought, it's sufficient that he thought he was dying. He's bleeding. There. He's lost blood. And he's sitting there with this paramedic who says, who did this to you? Who shot you? Or what happened? And he gets an answer. It's a name. And then the paramedic says that he's tied up watching this guy's vital signs and where they're going to the, where did they go? To Cedars-Sinai? I have no idea where they went. And so they get him to the hospital. And then the paramedic fills out some forms or whatever it was. Then he gets back to the station. And then he calls and gives that information to the police. May I jump in? No. It's not part of a, you know, it's a tricky question. And you may have a statement that someone says something under the oath that he's critically injured and he may not live. And or it's a statement that's made, you know, during a traumatic event or exciting event. It certainly has some indicia of reliability. Yeah. Yeah. It does have indicia of reliability. Yeah. Yeah. So. May I just give you some more facts? Because the way that you said it, I think that it would be helpful if I give you the timeline. They leave for the hospital at 1047. I know it was an hour and a half. Yeah. And he was doing nothing. The testimony is 20 minutes after they leave. That's 1107. He drops off the person at the hospital and has nothing more to do with the case. This is Witt, the guy who hears the information. I don't think that's what's in the opinion. That's what's in the record. Well, I don't think that's what's in the facts as found by the Court of Appeal. In fact, I'm pretty certain it's not. They just don't talk about it. No, they do. They talk about it in a footnote. Oh, that's right. Footnote 8. They discuss it. And I think Judge Pegerson can read it. I'm sorry. And he's over his time. Oh. Okay. I was just going to say that after that, when Witt's doing nothing, he still waits an hour and a half to two hours, even though he's got a cell phone, he can call the police. He doesn't have to be at his fire station in order to do that. Thank you, Your Honor. Thank you. Thank you. Thank you. May it please the Court, Vincent LaPietra on behalf of Respondent. The State Court recently determined that Marquez's out-of-court statement was non-testimonial. The State Court applied the principles of Crawford and Davis to reach a conclusion similar to that reached by the United States Supreme Court soon thereafter in Michigan v. Bryant. As the District Court noted, and as Petitioner acknowledged in his opening brief, each of the factors considered by the State Court was proper and appropriate factor to consider. Each of those factors was supported by facts in the record. And while those facts might be subject to reasonable disagreement as to their interpretation, that is not the standard. The State Court's determination of facts is owed deference. And the State Court determined that a severely injured person's brief response to an informal question by a paramedic firefighter was not a substitute for testimony. This was neither contrary to nor an unreasonable application of clearly established federal law, and this Court should affirm the District Court judgment. Unless there are any questions. So what are the objective circumstances that demonstrate the primary purpose of Firefighter Witt's question to Marquez? Well, as the test here, it's important to remember, is whether or not it was testimonial. That is, whether it was intended to be a substitute for testimony. Right, but one of the things we look at is the primary purpose of the interrogator. Right. And they determined that because it was brief, informal, and not structured, which are all things identified by the United States Supreme Court, that the primary purpose was not. And going to the facts that I said may be subject to debate, you know, one of the things that the firefighter said was, I was afraid he wasn't going to make it. And Petitioner now asserts that that means he was focused on preserving this for testimony. However, an equally reasonable interpretation of that fact is that he was afraid that the victim was going to die and that the shooter would never be apprehended and that there would be a gunman on the loose in the community. And while he may not have been concerned with his own safety because he was in an ambulance on the way to the hospital, the United States Supreme Court in Michigan, D. Bryant, says that even the declarant doesn't have to be aware of the ongoing nature of the emergency, but it's only the objective facts that matter. And here, those facts show that he communicated the statement to the police. The firefighter communicated the statement to the police within a reasonable amount of time for the purpose of apprehending the subject on the loose is what the California Supreme Court decided, and that is a reasonable determination of those facts. What rule of evidence are you pointing to? They're all printed up now. So they have been for whatever it is. I believe this was, well, the state court of appeal, after its Crawford analysis, turned to a spontaneous statement analysis and analyzed it under state code of evidence, spontaneous statements. Spontaneous declaration? Yes, Your Honor. Yes, Your Honor. And that would be a separate issue than the one here in the court, but the court of appeal determined it to qualify as a spontaneous statement. What about the confrontation clause? Well, that is the ‑‑ that was the first issue that was addressed by the court of appeal in its opinion under a separate heading, determining whether or not the statement was testimonial, because testimonial hearsay is what is precluded by the confrontation clause, whereas the other hearsay exceptions may or may not touch against that. So it all depends on what the purpose of the person who asked the question. Yes, Your Honor. The federal rule, the confrontation clause, prohibits admission of testimonial hearsay, and that falls on the purpose must establish or the person objecting. Unless there's an opportunity to cross-examine. Right. And the witness is unavailable. If it was testimonial, then there would need to be an opportunity to cross-examine. Okay. Thanks. Thank you. I just want to go back to ‑‑ I think that the best way to understand what somebody's purpose is is to look at their actions. And so if you're trying to deal with an emergency, you would act like it. Witt did not act like he was dealing with an emergency. Therefore, that could not possibly have been his primary purpose. I think that that's the crucial point. Thank you, Your Honor. Thank you. Thank you. This matter is submitted. Now we'll come to ‑‑
judges: Pregerson, Noonan, Wardlaw